
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **WILLIAM F. GAY, JR.** | § | |
| xxx-xx-3844 | § | Case No. 06-20093 |
| **and BARBARA L. GAY** | § | |
| xxx-xx-0417 | § | |
| 1935 CR 3333, Omaha, TX 75571 | § | |
| | § | |
| Debtors | § | Chapter 13 |

## **MEMORANDUM OF DECISION**

This matter is before the Court to consider the objection filed by William F. Gay, Jr. and Barbara L. Gay ("Debtors") to the amended proof of claim #8-2 filed by Onyx Acceptance Corporation ("Onyx") in the above-referenced case. The Debtors' objection to that unsecured claim is premised upon the assertion that the confirmation of the Debtors' Chapter 13 plan, which provided for surrender of the collateral previously securing Onyx's claim, effectuated a return of that automobile in full satisfaction of Onyx's claim due to the application of the "dangling paragraph" now appearing in the Code following 11 U.S.C. §1325(a)(9).[1]  After directing the parties to submit post-hearing briefing, the Court took the matter under advisement. This memorandum of

---

[1] This new paragraph was adopted upon the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (hereafter referenced as "BAPCPA"). Though this Court has previously discussed this grammatical aberration as a "dangling" paragraph, many opinions continue to reference it as a "hanging" paragraph — a sobriquet far too coarse and vulgar for any properly-raised Southerner to utilize. But, to avoid any unnecessary controversy and for ease of reference, this opinion shall refer to the dangling paragraph as 11 U.S.C. §1325(a)(*).

decision disposes of all issues pending before the Court.[2]

## Background

The Debtors entered into a retail sales contract for the purchase of a 2002 Dodge Ram automobile (the "Vehicle") on December 15, 2005. The terms and conditions of the contract grant Onyx a right to repossess and sell the Vehicle and the right to seek a deficiency claim against the Debtors in the event of payment default. It is undisputed that Onyx holds a valid purchase-money security interest covering the Vehicle and that the Vehicle was purchased for personal use within 910 days of the filing of the Debtors' voluntary petition for Chapter 7 relief on August 7, 2006. At the time of filing, the Debtors owed Onyx $34,025.81. On November 22, 2006, Onyx filed a Motion for Relief from Automatic Stay against the Vehicle. The stay motion was granted as unopposed following proper notice, and the automatic stay as to the Vehicle was terminated by an order entered on December 12, 2006. Onyx obtained possession of the Vehicle, and on January 11, 2007, Onyx foreclosed its security interest in the Vehicle for the sum of $18,400.00.

On February 8, 2007, the Debtors converted their case from Chapter 7 to Chapter 13. In light of the prior termination of the stay, the Debtors' Chapter 13 plan proposed a surrender of the Vehicle to Onyx. On May 3, 2007, Onyx filed a secured proof of claim

---

[2] This Court has jurisdiction to consider the Debtors' claim objection pursuant to 28 U.S.C. §1334(b) and 28 U.S.C. §157(a). The Court has the authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (B), and (O).

[#8-1] for $34,025.00. Six days later, it amended that claim, deleting any reference to a secured value, and instead asserting a general unsecured claim [#8-2] of $16,060.31, representing the deficiency balance remaining after the sale of the Vehicle. The Debtors' Chapter 13 plan was confirmed on May 16, 2007, and the Debtors subsequently filed the present objection to the allowance of claim #8-2.

At the August 8, 2007 hearing, the Debtors argued that 11 U.S.C. § 1325(a)(*) allows the Debtors to surrender the Vehicle in full satisfaction of their debt since the Vehicle was unquestionably purchased within 910 days of filing, was intended for the personal use of the Debtors, and was the subject of an admittedly valid purchase-money security interest. Onyx, however, argued that because the stay was terminated and a foreclosure of the Vehicle occurred prior to the conversion of this case to Chapter 13, the dangling paragraph does not apply and it is entitled to a deficiency claim under state law and the contract.

## Discussion

In pre-BAPCPA days, allowed secured claims were routinely treated by Chapter 13 plans through a process known in bankruptcy circles as a "cramdown" in which 11 U.S.C. §506 [3] was utilized to bifurcate a secured creditor's claim into secured and

---

[3] The bifurcation of a claim is accomplished through §506(a) which provides that:

(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest

-3-

unsecured components. The allowed secured claim of the creditor, as defined by the replacement value of the collateral, regardless of the age or nature of such collateral, would then be satisfied through periodic payments, and any allowed unsecured deficiency claim would receive treatment as a general unsecured claim.

One of the major changes invoked by BAPCPA was the legislative effort to protect claims secured by newly-purchased vehicles from the use of the cramdown procedure. This protection was enacted in the form of §1325(a)(*) which provides that:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [period] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

---

in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

    (2) If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.

11 U.S.C. §506(a).

By eliminating access to the bifurcation provisions of §506(a), the allowed amount of a claim which falls within the realm of protection offered by §1325(a)(*) must be paid in its entirety. *In re Adaway,* 367 B.R. 571 (Bankr. E.D. Tex. 2007), and cases cited therein.

However, in this instance, the Debtors assert that the application of the dangling paragraph and its anti-bifurcation prohibition precludes Onyx from the assertion of an unsecured claim following the state law foreclosure of its security interest in the Vehicle.[4] They claim that, because of §1325(a)(*)'s prohibition against the use of the bifurcation provision of §506(a), the confirmation of their Chapter 13 plan effectively transforms their election to surrender the Vehicle to Onyx into a return of the collateral in full satisfaction of the debt by precluding Onyx from seeking a distribution on its deficiency claim in their bankruptcy case.

The Debtors' objection to the allowance of Onyx's unsecured claim must be overruled. First of all, on the facts presented to the Court, Onyx did not possess an allowed secured claim at the time of confirmation which could be subjected to any treatment under §1325(a)(5)(C). The undisputed facts establish that, as of the time of confirmation, the only claim which could have been treated by the Debtors' proposed Chapter 13 plan was the one that actually existed — the unsecured claim reflected in proof of claim #8-2 — and that unsecured claim is not subject to any treatment under §1325(a)(5). The Debtors' erroneous placement of Onyx's unsecured claim into a

---

[4] Anyone fairly assessing this situation would acknowledge that such a result, if validated, would be an unintended consequence of the legislation.

category reserved for the treatment of secured claims had no talismanic effect. It was an allowed unsecured claim at the time of confirmation. It remains an allowed unsecured claim. Thus, on the unique chronology presented by this particular case, the anti-bifurcation provision upon which the Debtors purportedly rely was never applicable to claim #8-2.

However, even if this were a more "typical" case without the Chapter 7 prelude, the Debtors' objection cannot withstand scrutiny. Had there been no prior foreclosure, had Onyx simply presented a secured claim for treatment in the Debtors' Chapter 13 plan, and had the Debtors elected in the same manner to exercise their option under §1325(a)(5)(C) to surrender the property securing that claim, Onyx would still be entitled to assert an unsecured deficiency claim. In this regard, the Court generally agrees with the extended analysis of this issue presented in *In re Particka*, 355 B.R. 616 (Bankr. E.D. Mich. 2006) and *In re Clark*, 363 B.R. 492 (Bankr. N.D. Miss. 2007).[5] In addition thereto, the Court would observe that a debtor's proposal within the confines of a

---

[5] This Court respectfully disagrees with its learned brethren in those cases only to the extent that they endorse the concept that confirmation of a plan authorizing surrender of property securing a 910-day claim legally terminates the bankruptcy estate's interest in the collateral as of that precise moment. The debtor's interest in the collateral is a creation of state property law and its termination is governed by state property law — not by §1325(a)(5)(C). For if collateral is surrendered under §1325(a)(5)(C) and is subsequently damaged prior to actual foreclosure due to the fault of the secured party, would not the Debtor's estate have a right to complain about a reduced foreclosure value arising from the negligence of the secured party? If the estate's interest is terminated upon confirmation (as *Particka* says), the answer would be negative, but that is not the correct answer. Thus, in this Court's opinion, *Particka*'s incorporation of the surrender analysis derived from a non-purchase-money context in *In re White*, 282 B.R. 418 (Bankr. N.D. Ohio 2002) is misplaced. While the reference to immediate termination of the estate's interest makes for a tidy package, it is neither accurate nor necessary.

proposed Chapter 13 plan to treat an allowed secured claim by surrendering the property securing such claim under the option granted by §1325(a)(5)(C) constitutes a request for authorization to surrender such property, and the entry of a confirmation order would authorize such a surrender. It is not a request for a valuation of that property, nor can it be legitimately said that the Court proceeds with a *sua sponte* valuation of property under that scenario. While §506, governing the determination of a secured status, may be technically *applic<u>able</u>* to the surrender option supplied by §1325(a)(5)(C),[6] it is never *actually applied* in that context or, in the vernacular of the title of the statute, "the value of such creditor's interest in the estate's interest in such property" is never *determined* in a surrender context. *See In re Stalica*, 2007 WL 2417385 at *2 (Bankr. W.D.N.Y. Aug. 24, 2007) [holding that § 506 is only applied where valuation or allowance are implicated, and neither are implicated where the collateral is actually surrendered and sold]. While the "determination" that §506 contemplates is the determination of that value, such a process is not necessary in order for the debtor to recognize the existence of a secured claim, nor is such a valuation necessary in order to subject it to treatment under the surrender option. A debtor in a surrender context is merely acknowledging the existence of the claim, secured by property of some unquantified value, which constitutes collateral

---

[6] Technically, §506(a) only applies to an "allowed claim of a creditor." Since "early confirmation" has now been mandated, without a corresponding effort by Congress to evaluate and address the impact of that decision on other processes contemplated by the Code, claims treated in an initial confirmation context are often not "allowed" claims in the technical sense of the Code because they are not even on file.

for the payment of that claim under state law, and it leaves the quantification of that secured status, and any resulting deficiency balance, to the processes contemplated by state law. *See Dupaco Comm. Credit Union v. Zehrung* (*In re Zehrung*), 371 B.R. 675, 678 (W.D. Wisc. 2006) ["... when collateral is surrendered pursuant to § 1325(a)(5)(C), the amount of the remaining unsecured claim is determined by state law, uniform commercial code sections 9-610 to 9-624."]. It is not accomplished by the confirmation of a Chapter 13 plan authorizing the surrender of collateral. As the Hon. David Houston recently observed, "[P]rior to BAPCPA, §506 did not bifurcate a secured creditor's claim upon surrender, nor does it do so post-BAPCPA."[7] *Clark*, 363 B.R. at 496.

## Conclusion

Accordingly, the Court concludes that the Debtors' objection to claim #8-2 filed by Onyx Acceptance Corporation must be overruled and such claim is allowed as a general unsecured claim in the amount of $16,060.31.[8] This memorandum of decision constitutes

---

[7] This conclusion is buttressed by the fact that it is § 502, and not § 506, that governs the disallowance of claims in a bankruptcy case. *See Travelers Cas. & Sur. Co. v. Pac. Gas & Elec. Co.*, __ U.S. __, 127 S. Ct. 1199, 1206, 167 L.Ed.2d 178 (2007) ["[W]e generally presume that claims enforceable under state law will be allowed in bankruptcy unless they are expressly disallowed" under § 502."]. *See also*, *Wells Fargo Fin. Acceptance v. Rodriguez* (*In re Rodriguez*), 2007 WL _____ at *___ (B.A.P. 9th Cir. August 28, 2007) [finding that §502(b) specifically enumerates the exclusive grounds for disallowance of claims, and "[n]owhere in the hanging paragraph or elsewhere (especially section 502) do we find any express or clear basis to disallow [the 910 creditor's] deficiency claim."].

[8] To the extent that any inference to the contrary could be drawn from the dicta contained in *In re Allen*, 360 B.R. 216, 222 n.10 (Bankr. E.D. Tex. 2006) regarding the evolving jurisprudence on this topic, it is hereby superseded.

the Court's findings of fact and conclusions of law[9] pursuant to Fed. R. Civ. P. 52, as incorporated into adversary proceedings in bankruptcy cases by Fed. R. Bankr. P. 7052. An appropriate order will be entered which is consistent with this opinion.

      Signed on 09/18/2007

*Bill Parker*

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[9] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.